**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

**JAMES IRVIN HILL**                                                                     **PLAINTIFF**

**v.**                                                          **CIVIL ACTION NO. 1:13cv544-MTP**

**WEXFORD HEALTH SOURCES, INC., ET AL.**                            **DEFENDANTS**

<u>**OPINION AND ORDER**</u>

THIS MATTER is before the Court on the following motions: (1) the Motion for Summary Judgment [151] filed by Defendant Mike Hatten; (2) the Motion for Summary Judgment [155] filed by the Defendants Charmain McCleave, Wexford Health Sources, Inc., and Ronald Woodall; (3) the Motion for Summary Judgment [157] filed by Defendants James Burke and Health Assurance, LLC; (4) the Motion for Summary Judgment [161] filed by Defendant Management Training Corp.; and (5) the Motions for Summary Judgment [171],[174], [179], [185] and Emergency Motion for Ruling [198], all filed by the Plaintiff James Hill. The Court having carefully considered the motions, the submissions of the parties, and the applicable law, finds that the Defendants' motions for summary judgment [151], [155], [157] and [161] should be granted and this matter be dismissed with prejudice.

<u>**FACTUAL BACKGROUND**</u>

Plaintiff James Irvin Hill, proceeding *pro se* and *in forma pauperis*, filed this civil rights action pursuant to 42 U.S.C. 1983 on or about June 29, 2013.[1] At the time of the alleged events giving rise to this lawsuit, Plaintiff was in the custody of the Mississippi Department of Corrections ("MDOC") and incarcerated at the South Mississippi Correctional Institution ("SMCI") and

---

[1]*See* Complaint [1] at 4.

Wilkinson County Correctional Facility ("WCCF"). He is currently incarcerated at the North Mississippi County Jail in Grenada, Mississippi. The Plaintiff's claims and relief sought were clarified and amended by his sworn testimony at a *Spears*[2] hearing held on July 1, 2014.[3]

The Plaintiff alleges that Defendants were deliberately indifferent to his medical needs by refusing to provide him a specific treatment while he was incarcerated at SMCI and WCCF. Specifically, Plaintiff alleges that health care providers and prison officials at both facilities failed to administer alpha interferon therapy[4]  in order to treat his hepatitis C virus ("HCV")[5] and cirrhosis,[6] despite his numerous requests for the treatment.[7]

Plaintiff alleges he first met with Defendant Dr. Woodall, a physician at SMCI, about obtaining alpha interferon treatment. Plaintiff alleges that Dr. Woodall applied an unknown set of criteria to determine whether he was a good candidate, and advised the Plaintiff that he did not meet the requisite criteria for the treatment to be approved. Plaintiff also alleges that Defendant Wexford

---

[2]*Spears v. McCotter*, 76 F.2d 179 (5th Cir. 1985).

[3]*See* Omnibus Order [63]; *Flores v. Livingston*, 405 F. App'x 931, 932 (5th Cir. 2010) (stating that the allegations made by a plaintiff at a *Spears* hearing supercede the claims alleged in the complaint).

[4]Alpha interferon is a type of protein that has anti-viral properties. Its major use has been as a therapy of chronic HCV. *See* Overview, Alpha Interferon and Peginterferon, UNITED STATES NATIONAL LIBRARY OF MEDICINE, *available at* http://livertox.nlm.nih.gov/AlphaInterferon_and_Peginterferon.htm.

[5]HCV is an infection caused by a virus that attacks the liver and causes inflammation. *See* Diseases and Conditions, Hepatitis C, MAYO CLINIC, *available at* http://www.mayoclinic.org/diseases-conditions/hepatitis-c/basics/definition/CON-20030618.

[6]Cirrhosis is a late stage of scarring of the liver caused by any number of diseases, including hepatitis. *See* Diseases and Conditions, Cirrhosis, MAYO CLINIC, *available at* http://www.mayoclinic.org/diseases-conditions/cirrhosis/basics/definition/CON-20031617

[7]*See* Omnibus Transcript [157-1] at 25-26.

2

Health, the company contracted to provide health care to inmates at SMCI and that employed Dr. Woodall, is responsible for the wrongful denial of alpha interferon therapy.[8]

Plaintiff next spoke with Defendant Dr. Charmaine McCleave, who is also a physician at SMCI, about receiving alpha interferon therapy. Plaintiff alleges that Dr. McCleave told him that his platelet count was too low to receive the treatment without a risk to his life. He alleges that she told him the treatment could only be administered to patients whose platelet count was 90 or above. Plaintiff maintains that his platelet count is 92 and that, therefore, he is qualified to undergo interferon therapy. Plaintiff states that McCleave was making excuses and creating false reasons why he could not receive the treatment.[9]

Plaintiff also states that Defendant Mike Hatten, an MDOC official who serves as the health care services administrator at SMCI, knew that Hill was being denied proper medical treatment and did nothing to assist him

Plaintiff was later transferred to WCCF, where he was examined by Defendant Dr. James Burke. Plaintiff alleges that Burke also refused the requested treatment because the Plaintiff did not meet the requisite criteria. Plaintiff claims that Dr. Burke acted on behalf of Defendant Health Assurances, LLC, the company that provides health services at WCCF and employs Dr. Burke, and that the entity is likewise responsible for the denial of treatment.[10]

Finally, Plaintiff claims that he wrote letters to Defendant Management Training Corporation ("MTC"), the private corporation that operates WCCF, requesting assistance in obtaining interferon

---

[8]*See* Omnibus Order [63] at 4.

[9]*See* Omnibus Transcript [157-1] at 27-28.

[10]*See* Omnibus Order [63] at 4.

therapy, but that the requests were not approved. Plaintiff alleges that MTC has therefore also denied him necessary medical care. Plaintiff alleges that MTC denied the treatment primarily for financial reasons, as Plaintiff believes interferon therapy to cost approximately $88,000.[11] .

Plaintiff seeks injunctive relief in the form of alpha interferon therapy, or some other similar treatment, and monetary damages.

## STANDARD

A motion for summary judgment will be granted only when "the record indicates that there is 'no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (citing Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The Court must view "the evidence in the light most favorable to the nonmoving party." *Id.* However, the nonmoving party "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). In the absence of proof, the Court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted). A nonmoving party cannot rest on its pleadings to avoid a proper motion for summary judgment. *See Celotex*, 477 U.S. at 325-26.

## ANALYSIS

### Defendants' Motions for Summary Judgment

A prison official violates the Eighth Amendment when he acts with deliberate indifference to a prisoner's serious health and safety needs. *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d

---

[11]*Id.* at 3, 4.

752, 754 (5th Cir. 2001). A plaintiff must meet an "extremely high" standard to show deliberate indifference. *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (internal quotations omitted). For a prison official to be liable for deliberate indifference, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Deliberate indifference is particularly difficult to establish when the inmate was provided with ongoing medical treatment. "Unsuccessful medical treatments, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert*, 463 F.3d at 346 (citations omitted). Complaints that more treatment should have been ordered, without more, are insufficient to show deliberate indifference, as "the decision whether to provide additional treatment is a classic example of a matter for medical judgment." *Domino*, 239 F.3d at 756. The plaintiff must instead show that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would evince a wanton disregard for any serious medical needs." *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).

Finally, a prisoner's allegation that prison officials failed to timely provide him with treatment does not, by itself, constitute deliberate indifference. "[D]elay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference that results in substantial harm." *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006).

Defendants Woodall, McCleave, and Burke

Plaintiff alleges that these physicians were deliberately indifferent to his medical needs by denying him alpha interferon therapy, or some other similar medication, to treat his HCV and cirrhosis while he was housed at SMCI and WCCF.

As stated above, "the decision whether to provide additional treatment is a classic example of a matter for medical judgment" that does not constitute deliberate indifference. *Domino*, 239 F.3d at 756. In this case, Plaintiff's own testimony at the *Spears* hearing indicates that the doctors' decisions to refuse alpha interferon therapy, or other similar HCV treatments, was based on their respective medical opinions. Plaintiff testified that Dr. Woodall applied some set of criteria or referred to a "scale" in order to deduce whether the Plaintiff could receive aggressive HCV therapy, and concluded that the Plaintiff was not a good candidate.[12] Plaintiff also stated that Dr. McCleave explained that his  blood platelet count was too low to receive the treatment without a risk to his life.[13] Finally, Plaintiff testified that Dr. Burke denied the treatment because Plaintiff did not meet the requisite criteria.[14]

Furthermore, Defendants Woodall, McCleave and Burke attest their conclusions as to the Plaintiff's HCV treatment were based on their own examinations, testing and consultations with other physicians. First, Dr. Ronald Woodall states in his sworn affidavit, offered in support of his motion for summary judgment:

> [I]t is my professional opinion that neither Alpha Interferon and other aggressive Hepatitis treatment are appropriate for Mr. Hill . . . . [Plaintiff's] laboratory tests have continued to be tracked and due to his low platelet count and his normal liver function, he is not a candidate for treatment . . . That a low platelet count may cause

---

[12]*Id.* at 3-4.

[13]*Id.* at 4.

[14]*Id.*

excessive bleeding . . . . [and] treatment for Hepatitis C will usually cause a further reduction in platelet counts.

Next, Dr. Charmaine McCleave opines in her sworn affidavit that she examined Plaintiff on May 16, 2013. She states:

At that time, his platelet count was 92,000 which when combined with his normal liver function test result meant that he was not a candidate for Hepatitis C treatment . . . . [I]n my professional medical opinion, Mr. Hill was treated appropriately on this occasion and was not a good candidate for additional Hepatitis C treatment.

Finally, Dr. Burke offered his sworn affidavit in support of his motion for summary judgment, in which he states:

I did not feel Mr. Hill met the criteria for Hepatitis C treatment, plus there seemed to be other things going on that muddled the picture. I conferred with Dr. Michael Reddix about Mr. Hill. Dr. Michael Reddix concurred that he did not think that Mr. Hill was a candidate for treatment as this time. Dr. Reddix noted that his liver function test seemed basically normal so active Hepatitis is unlikely, and, therefore, there is no need for Hepatitis meds.[15]

Furthermore, in support of their respective motions for summary judgment, Defendants offer over 1500 pages of the Plaintiff's medical records at SMCI and WCCF spanning only a few years time.[16] As set forth below, these records demonstrate that Plaintiff's HCV diagnosis was closely and regularly monitored, but that his doctors found his desired treatment to be either unnecessary or risky considering the Plaintiff's other medical issues.

Plaintiff was transferred to SMCI on April 5, 2013. Three days later on April 8, 2013, Dr. Ronald Woodall ordered a HCV panel.[17] On April 9, 2013, Plaintiff was enrolled in the chronic care

---

[15]*See* Affidavit of Dr. James Burke [157-4] at 5.

[16]*See* Medical Records [157-2], [157-3], [159], & [166].

[17]*Id.* at 406.

clinic at SMCI.[18] The Plaintiff's HCV test results came back on May 3, 2013. The results reflected

that the Plaintiff had a low platelet count[19] and normal liver functioning, according to his AST[20]

levels. Dr. Woodall states that because Plaintiff's liver function was normal, there was no need for

any treatment. He further explains that Plaintiff' low platelet count could cause excessive bleeding

if interferon therapy was administered.[21]

Dr. Charmain McCleave examined the Plaintiff on May 16, 2013, when he complained of

abdominal pain. Dr. McCleave notes that "[Plaintiff] wants to be treated but his platelets are 92 . .

. . [Plaintiff] is not eligible for treatment due to low platelets. I have tried to explain this to the

[Plaintiff] but he is not listening."[22] On May 31, 2013, the Plaintiff complained of abdominal pain,

and was referred to the doctor. On June 3, 2013, Plaintiff went to the chronic care clinic and was

examined by Dr. Woodall, who noted that the Plaintiff's abdomen was soft, non-tender, and that

there was no enlargement of his liver.[23] Dr. Woodall further noted that Plaintiff's HCV was stable

---

[18]*Id.* at 406-407.

[19]Dr. Woodall explains the Plaintiff's test results in his sworn affidavit, in which he states that the Plaintiff's platelet count of 92,000 is "considered low." [155-d] at 2. According to the United States National Library of Medicine, the normal number of platelets is between 150,000 and 400,000. *See* Platelet count, MedlinePlus, UNITED STATES NATIONAL LIBRARY OF MEDICINE, *available at* https://www.nlm.nih.gov/medlineplus/ency/article/003647.htm.

[20]AST stands for aspartate aminotransferase, an enzyme found in the liver, heart and muscles. An increased AST level is usually a sign of liver disease. *See* Apartate aminotransferase (AST) blood test, MedlinePlus, UNITED STATES NATIONAL LIBRARY OF MEDICINE, *available at* https://www.nlm.nih.gov/medlineplus/ency/article/003472.htm.

[21]*See* Affidavit of Ronald Woodall [155-3] at 2.

[22]*See* Medical Records [166] at 200-01.

[23]*Id.* at 196.

and well controlled.[24]

On July 18, 2013, Plaintiff was again evaluated at the chronic care clinic. Nurse Marshelia Osborne noted that Plaintiff suffered from no abdominal pain or distention.[25] On August 5, 2013, Dr. Woodall ordered additional lab work.[26] The Plaintiff's blood platelet count was up to 102,000, but that number is still considered low.[27] On August 10, 2013, Plaintiff complained of swollen feet and abdominal pain and was examined by Nurse Osborne, who referred the Plaintiff to a nurse practitioner.[28] On August 12, 2013, Plaintiff was examined by Nurse Practitioner Karen Deese, who noted that the Plaintiff's abdomen presented with mild to moderate distention and mild generalized tenderness with palpation, but also noted that the Plaintiff had no jaundice.[29] Deese prescribed the Plaintiff magnesium citrate[30] and Lasix,[31] apparently finding that his abdominal pain was due to a gastrointestinal issue.

On August 15, 2013, Plaintiff was transferred to WCCF. Upon his arrival at WCCF, Plaintiff

---

[24]*Id.* at 194.

[25]*Id.* at 216.

[26]*Id.* at 209.

[27]*Id.* at 220.

[28]*Id.* at 228-29.

[29]*Id.* at 226.

[30]Magnesium citrate is a saline laxative prescribed to treat constipation. *See* Magnesium citrate liquid, DailyMed, UNITED STATES NATIONAL LIBRARY OF MEDICINE, *available at* http://dailymed.nlm.nih.gov/dailymed/drugInfo.cfm?id=29529.

[31]Lasix, also known as furosemide, is a loop diueretic that prevents the body from absorbing too much salt. *See* Furosemide, MAYO CLINIC, *available at* http://www.mayoclinic.org/drugs-supplements/furosemide-oral-route/description/DRG-2007128 1.

denied any complaints or concerns.[32] On September 13, 2013, Plaintiff complained that his HCV was making him sick. Dr. Benjamin Yarbrough examined the Plaintiff and ordered a panel of comprehensive lab tests.[33] The Plaintiff underwent additional testing on September 19, 2013, when he visited the chronic care clinic.[34] These test results showed that the Plaintiff had a slightly elevated AST level, but his platelet count remained low.[35]

On October 22, 2013, the Plaintiff complained of stomach pain and the passing of blood. Dr. James Burke examined the Plaintiff and ordered new blood work so that he could observe the Plaintiff's current AST and blood platelet level.[36] The new tests showed that the Plaintiff's AST was at normal levels, indicating that his liver was functioning normally. The Plaintiff's blood platelet level, however, remained low.[37]

On November 8, 2013, Plaintiff again complained of abdominal pain. Dr. Burke ordered an AFP tumor marker, which tests for the presence of alpha-fetoprotein (AFP) in the blood. The test screens for liver cancer associated with HCV exposure.[38] The test results showed that the Plaintiff's

---

[32]*See* Medical Records [157-2] at 196.

[33]*Id.* at 210-11.

[34]*Id.* at 218.

[35]*See* James Burke Affidavit [157-4] at 2.

[36]*Id.* at 237-38.

[37]*See* Medical Records [157-3] at 236-37.

[38]See Alpha-Fetoprotein Tumor Marker (Blood), UNIVERSITY OF ROCHESTER MEDICAL CENTER, *available at* https://www.urmc.rochester.edu/encyclopedia/content.aspx?ContentTypeID=167&ContentID=alpha_fetoprotein_tumor_marker.

AFP levels were normal.[39] On December 6, 2013, Plaintiff underwent an ultrasound, which indicated possible cirrhosis of the liver.[40] On December 23, 2013, Plaintiff was evaluated at the chronic care clinic, and his liver function test was normal. Nevertheless, a CT of the Plaintiff's liver was ordered.[41] The CT was performed on January 6, 2013, and showed that the Plaintiff's liver was normal. Dr. Burke opines that the finding of a normal liver on the CT suggests that the Plaintiff does not suffer from cirrhosis, and that his HCV is asymptomatic.[42]

Plaintiff received additional blood tests in February of 2014, which showed that his AST level was well-within normal range.[43] Dr. Burke opines that he "did not feel Mr. Hill met the criteria for Hepatitis C treamtent."[44] Dr. Burke then went on to test Plaintiff for other ailments that might be causing his abdominal pain, including sending the Plaintiff to a non-prison GI specialist.[45] The Plaintiff received extensive treatment for GI-related issues for the next several months,[46] and his liver function tests remained normal for the duration of his incarceration at WCCF.[47]

"Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference." *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir.

---

[39]*See* Medical Records [157-3] at 24; *see also* James Burke Affidavit [157-4] at 3.

[40]*Id.* at 177.

[41]*Id.* at 180, 183.

[42]*See* James Burke Affidavit [157-4] at 4.

[43]*See* Medical Records [157-3] at 235.

[44]*See* James Burke Affidavit [157-4] at 5.

[45]*See* Medical Records [157-3] at 435.

[46]*See generally id.*

[47]*Id.* at 438-442; 468-69.

1995) (affirming district court's dismissal of inmate's deliberate indifference claims as frivolous). Although the Plaintiff has submitted voluminous pleadings and documents, he has offered nothing to contradict his medical records or to establish that Defendants Woodall, McCleave and Burke were acting purposely or deliberately to cause him harm.[48]

Plaintiff argues that Defendant McCleave provided him with false reasons for why he did not receive alpha interferon treatment, and that the other physicians could have mistakenly applied the criteria for deciding whether interferon treatment was appropriate. Such statements, even if true, would at best establish negligence or medical malpractice, neither of which are actionable under Section 1983. *See Gobert*, 463 F.3d at 346 (holding that "acts of negligence . . . [and] medical malpractice do not constitute deliberate indifference").

Finally, Plaintiff repeatedly insinuates that the decision to refuse alpha interferon therapy was financially motivated, as the treatment is considerably expensive. *See Hanna v. Corrections Corporation of America*, 95 Fed. App'x 531, 532 (5th Cir. 2004) ("The denial or delay of necessary medical treatment for financial of other improper motives not based on medical reasons may

---

[48]For instance, Plaintiff submits a document prepared by Dr. Vishwanath Shenoy, who conducted a gastrointestinal consult on the Plaintiff in November of 2014. Dr. Shenoy writes, "[Plaintiff] is quite upset that prison is not treating his hepatitis C." Under the Assessment and Plan section, Dr. Shenoy further writes, "Obtain lab work and treat for hepatitis C with Harvoni one tablet daily for three months." *See* Physician Assessment [173-1] at 3. The Plaintiff does not directly refer to the assessment in his pleadings. To the extent the Plaintiff offers the assessment to show that Dr. Shenoy's assessment, which is contrary to the assessments of Defendants Dr. Woodall, Dr. McCleave, and Dr. Burke, entitles him to aggressive HCV treatment, the Court finds such an argument to be without merit. The United States Court of Appeals for the Fifth Circuit has repeatedly stated that a disagreement between doctors as to the correct course of treatment does not equate to deliberate indifference. *E.g., Stewart v. Murphy*, 174 F. 3d 530, 535 (5th Cir. 1999) (holding that a doctor did not act with deliberate indifference when he did not follow a local surgeon's recommendation that the inmate be transferred to another facility to receive physical therapy); *Muse v. Warner*, 1993 WL 543340 (5th Cir. Dec. 15, 1993) ("The disagreement in diagnosis between the initial doctor and the subsequent doctors does not equal denial of medical care of show deliberate indifference.").

constitute an Eighth Amendment violation."). However, nothing in the Plaintiff's medical records shows this to be the case and Plaintiff has offered no evidence in support of his allegation. Rather, as outlined above, the evidence in this case demonstrates that the decision to refuse HCV therapy was based on the medical judgment of the Plaintiff's physicians.

At this stage of the proceedings, Plaintiff can longer rest on the allegations contained in his pleadings. *See Celotex*, 477 U.S. at 325-26. The Plaintiff must instead come forward with evidence illustrating a genuine dispute of material fact, and he must do more than re-assert the allegations contained in his complaint. *See Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996) (holding that once the movant has pointed out the absence of evidence supporting the nonmoving party's case, a party confronted with a motion for summary judgment is required to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial.").

In sum, the Court finds that the Plaintiff's allegations are tantamount to a disagreement with his medical treatment, which fails to rise to the level of an Eighth Amendment violation.[49] *See Gobert*, 463 F.3d at 346. Accordingly, Defendants Woodall, McCleave and Burke are entitled to judgment as a matter of law.

Defendant Mike Hatten

The Plaintiff also alleges that he wrote letters to Defendant Mike Hatten, a health care administrator at SMCI, regarding the denial of interferon therapy, but that Hatten did nothing to

---

[49]The Court also notes that the Fifth Circuit, as well as a number of district courts, have found that the refusal to provide interferon therapy to an inmate with HCV, by itself, fails to establish deliberate indifference. *See, e.g., Davidson v. Texas Dep't of Criminal Justice*, 91 Fed. App'x 963 (5th Cir., Mar. 10, 2004) (not selected for publication in the Federal Reporter); *Tharp v. Justice*, Civil Action No. 5:05cv6, 2006 WL 1677884, at *17 (E.D. Tex. June 16, 2006); *Krueger v. Hulipas*, No. Civ. A. H-04-0890, 2006 WL 623686, at *2 (S.D. Tex. Mar. 9, 2006).

intervene.

Upon review of the record, the Court finds no evidence that Hatten was personally involved with Plaintiff's medical care. As alleged by the Plaintiff, Hatten is an administrator, not a health care professional. Thus, even if the Plaintiff communicated his medical issues to Hatten, the Defendant was not in a position to evaluate and make decisions regarding the Plaintiff's medical issues.

Because Hatten was not personally involved in Plaintiff's medical treatment, and because there is no *respondeat superior* liability under Section 1983, Plaintiff has failed to establish that Hatten violated his constitutional rights. *See Stewart v. Murphy*, 174 F.3d 550, 536 (5th Cir. 1999) (holding that medical director at state prison was not deliberately indifferent to the plaintiff's medical needs where the director was not a treating physician and had limited contact with the plaintiff); *see also Hailey v. Savers*, 240 Fed. App'x 670, 672 (5th Cir. 2007) (affirming dismissal of prison medical administrator because the plaintiff had failed to allege facts demonstrating the administrator had personal involvement in the events giving rise to the lawsuit, or implemented policies to physically harm the plaintiff). Accordingly, the Court finds that Defendant Hatten is entitled to judgment as a matter of law.

<u>Defendants Wexford and Health Assurance</u>

Plaintiff argues that Wexford and Health Assurance, both privately owned companies under contract with SMCI and WCCF to provide health care to inmates, are responsible for the denial of interferon therapy. Plaintiff alleges that because Wexford employed Dr. Woodall and Dr. McCleave, and Health Assurance employed Dr. Burke, the two entities are therefore liable for the decisions and actions of their employees.

The Court finds the Plaintiff's allegation are without merit. It is well-settled that Section

1983 does not implicate supervisory or *respondeat superior* liability. *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002).  In addition, Plaintiff has failed to demonstrate that either Wexford or Health Assurance affirmatively participated in any constitutional deprivation or implemented an unconstitutional policy. *See Mouille v. City of Live Oak, Tex.*, 977 F.22d 924, 929 (5th Cir. 1992) (holding that in order to establish vicarious liability it must be proven that the defendant affirmatively participated in a constitutional deprivation or implemented an unconstitutional policy). Finally, as set forth above, the Court has found that the employees of Defendants Wexford and Health Assurance did not commit a constitutional violation.

Accordingly, for these reasons, Defendants Wexford and Health Assurance are entitled to judgment as a matter of law.

Defendant MTC

Defendant MTC is a private company contracted by the MDOC to provide services relating to the confinement and supervision of inmates housed at WCCF. The Plaintiff alleges that he wrote letters to MTC to request its assistance in obtaining interferon therapy, but that these requests were not granted.

In order to establish vicarious liability it must be proven that the defendant affirmatively participated in a constitutional deprivation or implemented an unconstitutional policy. *See Mouille v. City of Live Oak, Tex.*, 977 F.22d at 929. MTC asserts that it does not employ or contract with any medical doctors, nurses, health care administrators, or other medical professionals at WCCF. MTC further states that its personnel at WCCF have no authority to make medical decisions or prescribe medication, and have no involvement in deciding a course of medical treatment for inmates. Rather, those decisions are made by the medical professionals employed by Defendant Health Assurance,

LLC.[50] Plaintiff has not alleged, or provided any evidence, that MTC was responsible for his medical care at WCCF. Furthermore, although the Plaintiff repeatedly argues that he was denied interferon therapy due to its expense, there is no evidence whatsoever of an ongoing MTC policy denying inmates medical treatment for financial reasons. Therefore, the Court finds that MTC is entitled to judgment as a matter of law.

**Plaintiff's Motions for Summary Judgment**

In his Motions for Summary Judgment [171], [174], [179] and [185], Plaintiff simply repeats his original allegations and references other claims that are not before the Court. Therefore, due to the analysis of the Plaintiff's claims *supra*, the Court concludes that Plaintiff's motions for summary judgment should be denied.

**Plaintiff's Motion for an Emergency Ruling**

In this Motion [198], Plaintiff asks the Court to rule on the other pending motions in this matter and requests copies of all the pleadings and exhibits filed thus far. To the extent the Plaintiff requests the disposition of this matter, the motion is granted. As for his other request, the Plaintiff has been repeatedly advised that copies of the pleadings are only provided upon receipt of a money order payable to the clerk of court.[51] Thus, in all other respects, the motion is DENIED.

IT IS, THEREFORE, ORDERED:

1.   That the Motion for Summary Judgment [151] filed by Defendant Mike Hatten, the Motion for Summary Judgment [155] filed by the Defendants Charmain McCleave, Wexford Health Sources, Inc., and Ronald Woodall, the Motion for Summary Judgment [157] filed by Defendants James Burke and Health Assurance, LLC, and the Motion for Summary Judgment [161] filed by Defendant Management Training

---

[50]*See* Memorandum [162] at 2.

[51]*See* Docket Entries dated January 8, 2015 and January 15, 2015; Remark [146]; Order [187].

Corporation are GRANTED;

2.     That the Motions for Summary Judgment [171], [174], [179], and [185] filed by the Plaintiff are DENIED;

3.     That the Emergency Motion for Ruling [198] filed by the Plaintiff is GRANTED IN PART and DENIED IN PART;

4.     That this matter is dismissed with prejudice;

5.     That a separate judgment in accordance with Federal Rule of Civil Procedure 58 will be filed herein.

SO ORDERED this the 3rd day of December, 2015.

s/ Michael T. Parker
United States Magistrate Judge

17